# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| SANDRA JOHNSON GARDNER, | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | }   Case No. 2:11-CV-3450-RDP |
| | } |
| ALOHA INSURANCE SERVICES, et al., | } |
| | } |
| Defendants. | } |

## MEMORANDUM OPINION

Plaintiff filed this action *pro se* in the Circuit Court of Jefferson County, Alabama. It was removed to this court by Defendant Wal-Mart. (Doc. # 1). On December 19, 2011, Plaintiff filed an Amended Complaint. Plaintiff's Amended Complaint seeks damages from Defendants "[a]s a direct result and proximate result of the product liability by the Defendants" relating to a fire at Plaintiff's residence which she claims originated in a defective ceiling fan. (Doc. # 14). Although Plaintiff's Amended Complaint is somewhat unclear, it appears (and Defendants have presumed) that she has asserted a product liability action against Defendants under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD").

This matter is before the court on the following motions:

1. Defendant Aloha Housewares, Inc.'s Motion for Summary Judgment (Doc. # 28);

2. Defendant Aloha Housewares, Inc.'s Motion to Strike Affidavit of Lewis Gant (Doc. # 37), in which Defendant Wal-Mart joins (Doc. # 56);

3. Defendant Aloha Housewares, Inc.'s Motion to Exclude Plaintiff's Expert Lewis Gant (Doc. # 38), in which Defendant Wal-Mart Stores East, L.P. also joins (Doc. # 57);

4. Plaintiff's Motion for Extension to Allow the Admittance of the April 6, 2012 Submitted Electrical Expert Witness (Doc. # 40);

  5.  Defendant Wal-Mart Stores East, L.P.'s Motion for Summary Judgment (Doc. # 46);

  6.  Plaintiff's Motion for Production from the Defendants Aloha Housewares, Inc. (Doc. # 51); and

  7.  Plaintiff's Motion for Summary Judgment (Doc. # 52).

These motions are fully briefed.

**I. FACTS[1]**

In approximately 2007 or 2008, Plaintiff purchased a ceiling fan in a sealed box from the Wal-Mart store located at 9248 Parkway East in Birmingham, Alabama. (Doc. # 1). The fan was manufactured by Aloha Housewares.

Wal-Mart did not manufacture or assemble the fan. It did not have any role in designing, testing, packaging, or labeling the fan. Nor did it make any modifications to the fan. (Doc. # 46-2 at 162-63).

The fan was installed in Plaintiff's bedroom at her mother's home in the light fixture over her bed by Harold Hammonds of Hammonds Construction. (Doc. # 46-2 at 77-80). Hammonds was performing some other work at the home, and Plaintiff gave the fan to him to install. (Doc. # 46-2 at 81-82).

On August 26, 2009, the fan caught on fire and set fire to the bed under the fan. (Doc. # 46-2 at 82, 92-93). Plaintiff was able to put the fire out before the Birmingham Fire Department was able

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

to respond. (Doc. # 46-2 at 93-94, 98). The Fire Department defined the fire as Incident Type: "440 - Electrical wiring/equipment problem, other." (Doc. # 31 at 102, 170-71; Doc. # 5 at 29).

On November 29, 2011, the court entered a Scheduling Order requiring Plaintiff to disclose any expert reports by January 30, 2012. (Doc. # 12).

At her December 21, 2011 deposition, Plaintiff testified that "I think something happened inside that fan that it caught itself on fire. I think it came from the inside, inner mechanism of that fan." (Doc. # 31 at 102). Plaintiff bases her opinion on the Fire Department's Incident Report. (Doc. # 31 at 102, 170-71; Doc. # 5 at 29).

On January 27, 2012, Plaintiff filed a document designated as "Plaintiff's Reports from Retained 'Expert' Under Fed. R. Civ. P. 26(a)(2)." (Doc. # 20). In that document, Plaintiff disclosed her treating physician, Dr. Ernest A. Claybon, Jr., as an expert and produced an affidavit signed by him indicating that he treated Plaintiff for smoke inhalation secondary to the August 26, 2009 house fire. (*Id.*).

On March 8, 2012, Defendant Aloha Housewares moved for summary judgment. (Doc. # 28). In response to Defendant Aloha Housewares' Motion, Plaintiff submitted an affidavit from Lewis Gant, a purported expert, which had not previously been produced to Defendants in advance of Plaintiff's deadline for expert disclosures. (Doc. # 36 at 19-20).

Mr. Gant's affidavit states that he is a Certified Licensed Electrical Instructor for Lawson State Junior College. (Doc. # 36 at 19). Mr. Gant states that he examined the electrical wiring at Plaintiff's mother's house and found no problems with the wiring. (Doc. # 36 at 19). Mr. Gant did not examine the ceiling fan at issue which had already been removed when Mr. Gant performed his inspection. (Doc. # 36 at 19-20). However, he states that he is "in agreement with the Birmingham

Fire Department's assessment; which was that the fire was caused by the electrical wiring/equipment problem which was the defected ceiling fan they removed." (Doc. # 36 at 19-20). He further states that he will testify "that the Birmingham Fire Department's statement: 'Incident Type 44 - Electrical wiring/equipment problem' was the way that they defined the inter defected mechanisms of the ceiling fan which they rightfully immediately removed." (Doc. # 36 at 19-20).

On August 28, 2009, Defendant Aloha Housewares wrote to Plaintiff in response to her claim regarding the ceiling fan. (Doc. # 36 at 23). Defendant Aloha provided Plaintiff with a UPS Call Tag and "Call Tag Information" form to enable Plaintiff to return the fan to them for inspection. (Doc. # 36 at 22-23). The document titled "Procedure for UPS Call-Tags" instructs a consumer to "place the defective item or items" in packaging for return. (Doc. # 36 at 22). Plaintiff took the fan to UPS and had them send the fan to Aloha Housewares. (Doc. # 46-2 at 173-74).

## II.  SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* 249.

"To be admissible in support of or in opposition to a motion for summary judgment, a document must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Saunders v. Emory Healthcare, Inc.*, 360 F. App'x 110, 113 (11th Cir. 2010) (citing 10 A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2722, at 382-84 (3d ed.1998)).

**IV.   DISCUSSION**

The Alabama Supreme Court adopted the AEMLD to alleviate the "almost impossible burden" plaintiffs sometimes bore in attempting to establish negligence in a products-liability action under the traditional negligence theories. *McMahon v. Yamaha Motor Corp., U.S.A.*, 95 So.3d 769, 772 (Ala. 2012). There is, however, "a measure of commonality" between AEMLD and negligence claims. *McMahon,* 95 So.3d at 772.

> Specifically, a plaintiff pursuing a products-liability claim against a manufacturer under either theory can succeed only if the plaintiff establishes that the product at issue is sufficiently unsafe so as to render it defective. In an AEMLD case, this is done by proving that a safer, practical, alternative design was available to the manufacturer at the time it manufactured the allegedly defective product. *General*

>*Motors Corp. v. Jernigan*, 883 So.2d 646, 662 (Ala. 2003). Once established, that is sufficient to succeed on the AEMLD claim. In a negligence case, the plaintiff must establish not only that the product at issue is defective, but also that the manufacturer failed to exercise due care in the product's manufacture, design, or sale. [*Atkins v. American Motors Corp.*, 335 So.2d 134, 139 (Ala. 1976)].

*McMahon,* 95 So.3d at 772.

To establish an actionable AEMLD claim, Plaintiff must prove:

1. she suffered injury or damage to herself or her property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if

    a. the seller is engaged in the business of selling such a product, and

    b. the product is expected to and does reach the user or consumer without substantial change in the condition in which it was sold.

*Tanksley v. ProSoft Automation, Inc*., 982 So.2d 1046, 1049-50 (Ala. 2007); *Kirk v. Garrett Ford Tractor, Inc.*, 650 So.2d 865, 866 (Ala. 1994); *Yamaha Motor Co. v. Thornton*, 579 So.2d 619, 621 (Ala. 1991); *Casrell v. Altec Indus., Inc.*, 335 So.2d 128, 132-33 (Ala. 1976).

"In an AEMLD action, 'the plaintiff must affirmatively show that the product was sold with a defect or in a defective condition.'" *Tanksley*, 982 So.2d at 1051 (quoting *Jordan v. General Motors Corp*., 581 So.2d 835, 836-37 (Ala. 1991). "'Without evidence to support the conclusion that the product was defective and/or unreasonably dangerous when it left the hands of the seller, the burden is not sustained.'" *Id.* (quoting *Jordan*, 581 So.2d at 837). Importantly, "'[p]roof of an accident and injury *is not in itself sufficient* to establish liability under the AEMLD; a defect in the product must be *affirmatively shown*.'" *Id.* (quoting *Townsend v. General Motors Corp*., 642 So.2d 411, 415 (Ala. 1994)) (emphasis added).

6

### A. Plaintiff's Proposed Expert Testimony is Due to be Excluded

A review of the parties' submissions indicates that Plaintiff relies on the "expert" testimony of Lewis Gant to support her claim that the ceiling fan was defective. Therefore, as a threshold matter, the court must address Defendants' motions seeking to strike Mr. Gant's affidavit and exclude his testimony in conjunction with the Motions for Summary Judgment. The following motions are directed to the issue of whether Mr. Gant's testimony should be admitted:

1. Defendant Aloha Housewares, Inc.'s Motion to Strike Affidavit of Lewis Gant (Doc. # 37), in which Defendant Wal-Mart joins (Doc. # 56);

2. Defendant Aloha Housewares, Inc.'s Motion to Exclude Plaintiff's Expert Lewis Gant (Doc. # 38), in which Defendant Wal-Mart Stores East, L.P. also joins (Doc. # 57); and

3. Plaintiff's Motion for Extension to Allow the Admittance of the April 6, 2012 Submitted Electrical Expert Witness (Doc. # 40).

The Motion to Strike Mr. Gant's affidavit is based on two primary arguments: the affidavit (1) is untimely, and (2) based upon speculation. (Doc. # 56). The Motion to Exclude Mr. Gant's expert testimony is based on the argument that Mr. Gant's opinions as set forth in his affidavit fail to meet the standards set forth in *Daubert v Merrell Dow Pharmaceuticals, Inc.*, 509 US 579 (1993) and Rule 702 of the Federal Rules of Evidence. (Doc. # 57). The Motion to Exclude also argues that Defendants are prejudiced because Mr. Gant was disclosed as an expert too late in this case. (Doc. # 57).

The court will not strike the affidavit or Mr. Gant as an expert due to untimeliness. although admittedly, the disclosure of Mr. Gant as a witness and the production of his affidavit did occur after Plaintiff's deadline for disclosing experts. That issue becomes moot because the court agrees with

Defendants that a *Daubert* analysis requires the exclusion of Mr. Gant's affidavit and proposed expert opinions.

The Eleventh Circuit has instructed that, in determining the admissibility of expert testimony, the court must "engage in a rigorous three-part inquiry," considering whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address;
>
> (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert* [*v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)*]; and
>
> (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) (citations omitted, alteration in original).  In evaluating the admissibility of proposed expert testimony, "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 594-95.

Based upon the record before the court, Mr. Gant is clearly not competent to testify as to the matters contained within his affidavit.  Mr. Gant states that he is a Certified Licensed Electrical Contractor.  His affidavit purports to opine on the meaning of a document authored by the Birmingham Fire Department.  In particular, Mr. Gant's affidavit states that the Birmingham Fire Department determined that the ceiling fan was defective and the cause of the fire.  However, nothing in the record indicates that Mr. Gant was involved in the creation of that document, spoke to anyone about the creation of that document, or that he has any expertise related to firefighting or, more importantly, determining causes of fires. Moreover, Mr. Gant's affidavit indicates that he never

inspected the fan at issue to be able to independently determine whether it caused the fire because he states the fan had already been removed by the Fire Department.

Nor can this court even begin to find that Mr. Gant's methodology in reaching his conclusions is sufficiently reliable to be admissible. There simply is no methodology referenced in the affidavit. The affidavit contains pure speculation as to matters outside Mr. Gant's personal knowledge. In *McCreless v. Global Upholstery Co., Inc.*, 500 F.Supp.2d 1350, 1357 (N.D. Ala. 2007), the court excluded proposed expert testimony because "[t]he problem with the methods and procedures behind [the expert's opinion] is that, as far as the court can detect, there were no methods or procedures employed." *Id.* at 1357. The same is true here.

Federal Rule of Evidence 702 provides for the admission of expert testimony when "scientific, technical, or other specialized knowledge will assist the trier of fact." Rule 702, Fed.R.Evid. "[A] district court judge is to act as a 'gatekeeper' for expert testimony, only admitting such testimony after receiving satisfactory evidence of its reliability." *Dhillon v. Crown Controls Corporation*, 269 F.3d 865, 869 (7th Cir. 2001); *see also U.S. v. Majors*, 196 F.3d 1206, 1215 (11th Cir. 1999). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.

Under Rule 702, the court "has an obligation to screen expert testimony to ensure it stems from a reliable methodology, sufficient factual basis, and reliable application of the methodology to

the facts." *Whatley v. Merit Distribution Services*, 166 F.Supp.2d 1350, 1353 (S.D. Ala. 2001) (citations omitted). The proponent of the testimony does not have the burden of proving that it is scientifically correct. However, that party must prove, by a preponderance of the evidence, that the witness is qualified, and that his testimony is both reliable and helpful. *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999) (party offering the expert has the burden of satisfying these three elements by a preponderance of the evidence.); *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004) (same); *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (same). Where the proponent of the testimony fails to meet this burden, that testimony "must be excluded." *Beam v. McNeilus Trauck and Mfg., Inc.*, 697 F.Supp.2d 1267, 1271 (N.D. Ala. 2010).

Mr. Gant has not been shown to be qualified to the testify to the opinions he proffers, and his affidavit and proposed testimony have simply not been shown to be reliable or potentially helpful to the trier of fact. Therefore, the Motion to Strike Affidavit of Lewis Gant (Doc. # 37), and joinder therein (Doc. # 56), and the Motion to Exclude Plaintiff's Expert Lewis Gant (Doc. # 38), and the joinder therein (Doc. # 57) are due to be granted. Plaintiff's Motion for Extension to Allow the Admittance of the April 6, 2012 Submitted Electrical Expert Witness (Doc. # 40) is moot.

## B. Plaintiff Has Not Presented Substantial Evidence That the Ceiling Fan was Defective

To establish her claim under the AEMLD, Plaintiff must show that the ceiling fan at issue was defective. A "'defect' is that which renders a product 'unreasonably dangerous,' *i.e.*, not fit for its intended purpose." *Casrell v. Altec Indus., Inc.*, 335 So.2d 128, 133 (Ala. 1976). "Thus, for example, a product is defective if it does not meet the 'reasonable expectations of an ordinary consumer as to its safety.'" *Ray v. Ford Motor Co.*, 792 F.Supp.2d 1274, 1282 (M.D. Ala. 2011)

(quoting *Jordan v. Gen. Motors Corp.*, 581 So.2d 835, 837 (Ala. 1991)).  "Alabama case law requires an AEMLD plaintiff to come forward with, among other things, *at least some evidence* to support an inference that the product in question was defective." *Ray*, 792 F.Supp.2d at 1282 (citing *Rudd v. Gen. Motors Corp.*, 127 F.Supp.2d 1330, 1345 (M.D. Ala. 2001) (emphasis added).  Most importantly as it applies to this case, "*[m]ere proof of an accident* with ensuing injuries is *insufficient to establish AEMLD fault* because 'the plaintiff must affirmatively show that the product *was sold with* a defect or in a defective condition.'" *Ray*, 792 F.Supp.2d at 1282 (quoting *Jordan*, 581 So.2d at 836-37) (emphasis added).

  The Rule 56 evidence before this court shows that Plaintiff purchased the fan at issue at Wal-Mart in approximately 2007 or 2008.  The fan was installed in a light fixture over Plaintiff's bed by Harold Hammonds of Hammonds Construction.  (Doc. # 46-2 at 77-82). Then, after normal use for some period of time, on August 26, 2009, the fan caught on fire.  There is no admissible evidence in the record to establish the cause of the fire except a note by the Birmingham Fire Department defining the fire as Incident Type: "440 - Electrical wiring/equipment problem, other."  (Doc. # 31 at 102, 170-71; Doc. # 5 at 29).  The record is completely devoid of evidence that the fan at issue was defective at the time it was sold.  Plaintiff has merely presented evidence that she was injured in an accident relating to the fan.  Under Alabama law, this is insufficient to establish her AEMLD claim.  She has failed to affirmatively show (or, in this context, present substantial evidence) that the ceiling fan was sold with a defect or in a defective condition.  *Ray*, 792 F.Supp.2d at 1282; *Jordan*, 581 So.2d at 836-37.

  "The AEMLD is a fault based doctrine, and accordingly, plaintiff[] 'must prove more than the fact that an injury occurred while [the plaintiff was] using the product ... [T]he plaintiff must

affirmatively show a defect in the product.'" *Borum v. Werner Co.*, 2012 WL 2047678, *14 (N.D. Ala. 2012) (quoting *Verchot v. General Motors Corp.*, 812 So.2d 296, 301 (Ala. 2001)). In the final analysis, while Plaintiff has shown that she suffered injuries from the fire related to the ceiling fan, she has failed to show that the ceiling fan was defective when sold or that the alleged defect was the cause of the fire. *See Borum*, 2012 WL 2047678 at *14. Therefore, Defendants, and not Plaintiff, are entitled to summary judgment on Plaintiff's AEMLD claim.[2]

### C.    Plaintiff's Claims Against Wal-Mart Are Barred by Alabama Code § 6-5-521

There is another, alternative reason that Wal-Mart is entitled to summary judgment here. Alabama law provides that a plaintiff may not assert any products liability action against a distributor unless one of the enumerated exceptions apply. Ala.Code § 6-5-521(b)(1)-(4)[3]; *Sewell v. Smith & Wesson Holding Corp.*, 2012 WL 2046830 * 2 (N.D. Ala. 2012). Section 6-5-521(b) of the Alabama Code states:

> (b) No product liability action may be asserted or may be provided a claim for relief against any distributor, wholesaler, dealer, retailer, or seller of a product, or against an individual or business entity using a product in the production or delivery of its products or services (collectively referred to as the distributor) unless any of the following apply:
>
> (1) The distributor is also the manufacturer or assembler of the final product and such act is causally related to the product's defective condition.
>
> (2) The distributor exercised substantial control over the design, testing, manufacture, packaging, or labeling of the product and such act is causally related to the product's condition.

---

[2] If Plaintiff's claim had been brought under a common law negligence theory, the failure to establish a defect by affirmative proof would doom that claim as well. "In a negligence case, the plaintiff must establish not only that the product at issue is defective, but also that the manufacturer failed to exercise due care in the product's manufacture, design, or sale." *McMahon,* 95 So.3d at 772; *Atkins*, 335 So.2d at 139.

[3] The effective date of Section 6-5-521 was June 9, 2011, prior to the filing of Plaintiff's Complaint. (Doc. # 1).

> (3) The distributor altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought.
>
> (4) It is the intent of this subsection to protect distributors who are merely conduits of a product. This subsection is not intended to protect distributors from independent acts unrelated to the product design or manufacture, such as independent acts of negligence, wantonness, warranty violations, or fraud.

Ala.Code § 6-5-521(b)(1)-(4).

Plaintiff has presented no evidence to support the application of any of these exceptions to Wal-Mart. In fact, Plaintiff admitted that Wal-Mart did not manufacture or assemble the fan, did not have any role in designing, testing, packaging, or labeling the fan, and did not make any modifications to the fan. (Doc. # 46-2 at 162-63). Therefore, Wal-Mart is entitled to summary judgment for this additional reason.

### D. Plaintiff's Motion for Production from Defendant Aloha Housewares is Untimely

Plaintiff's Motion for Production from the Defendant Aloha Housewares, Inc. (Doc. # 51) was filed on July 6, 2013. Plaintiff's motion seeks production of the fan she returned to Aloha Housewares and the claim file on the fan. Defendant Aloha Housewares opposes Plaintiff's Motion as being untimely because it was filed after the close of discovery and because it gives no justification for Plaintiff's failure to seek the discovery earlier. (Doc. # 55).

Plaintiff filed her Complaint in this case on August 18, 2011. (Doc. # 1). On October 20, 2011, the parties filed their report of parties' planning meeting in which they proposed a discovery deadline of June 22, 2012. (Doc. # 9). They also proposed expert disclosure deadlines of January 16, 2012 for Plaintiff and of March 5, 2012 for Defendants. (Doc. # 9). On November 29, 2011, the court conducted a scheduling conference and entered a scheduling order. (Docs. # 11, 12). In

the Scheduling Order, the court adopted the parties proposed discovery deadline of June 22, 2011. (Doc. # 12). The court set Plaintiff's expert disclosure deadline for Plaintiff on January 30, 2012. (Doc. # 12).

Defendant Aloha Housewares filed an early Motion for Summary judgment on March 8, 2012. (Doc. # 28). In response, Plaintiff submitted her belated expert affidavit from Mr. Gant. (Doc. # 36). On April 20, Defendant Aloha Housewares moved to strike Mr. Gant's affidavit and exclude him as an expert. (Docs. # 37, 38). On May 1, 2012, Plaintiff moved for an extension to allow her April 6, 2012 expert affidavit admitted. (Doc. # 40). On June 5, 2012, Defendant Wal-Mart filed its Motion for Summary Judgment. (Doc. # 46). Despite all of this briefing, which took place within the discovery period and pointed out Plaintiff's failure to provide expert testimony establishing that the fan was defective, Plaintiff did not timely seek production of the ceiling fan at issue. Rather, her Motion (Doc. # 51) was filed after Defendants' Motions for Summary Judgment had been filed, and three weeks after the discovery deadline.

District courts have broad discretion in managing their cases. *Chrysler Int'l Corp. v. Chenaly*, 280 F.3d 1358, 1360 (11th Cir. 2002). The broad discretion given to the court includes the management of pretrial activities such as discovery and scheduling. *Id.* (citing *Johnson v. Bd. of Regents of Univ. Georgia*, 263 F.3d 1234, 1269 (11th Cir. 2001)). Plaintiff had ample time to conduct discovery in this matter within the period allowed for discovery.[4] Furthermore, Defendants' motions for summary judgment were filed during the discovery period and put Plaintiff on notice that she might need to conduct discovery. Nevertheless, she waited until after the discovery deadline

---

[4] Admittedly, Plaintiff notified the court that she had oral surgery on June 20, 2012 and attended speech therapy thereafter. (Doc. # 50). However, the documentation submitted does not explain Plaintiff's complete failure to initiate *written* discovery seeking inspection of the fan, or for that matter any other type of discovery during the period allowed, *i.e.*, between December 2011 and June 2012.

had passed to do so. Plaintiff's failure to initiate discovery during the appropriate time period counsels against her being able to initiate discovery at this late date. Plaintiff's Motion is clearly untimely. *Great American Ins. Co. v. Jefferson County Com'n*, 776 F.Supp.2d 1252, 1259 (N.D. Ala. 2010) ("The Eleventh Circuit has consistently held that motions filed after a deadline imposed by a court should be denied as untimely."), citing *Payne v. Ryder Sys., Inc. Long Term Disability Plan*, 173 F.R.D. 537, 540 (M.D. Fla. 1997); *AB Diversified Enters., Inc. v. Global Transp. Logistics, Inc.*, 2007 WL 1362632, at *1 (S.D. Fla. May 7, 2007) (denying a motion to compel filed two months after the discovery deadline and after summary judgment motions were fully briefed)). *See also Riley v. Harris County Sheriff's Department*, 2009 WL 2913071 at *2 (M.D. Ga. 2009) (denying motion to take a deposition after the close of discovery, finding that the plaintiff had ample opportunity to depose the defendant during the discovery period and did not do so); *McMullen v. Charter Schools USA, Inc.*, 2011 WL 56065 at *6 (S.D. Fla. Jan.7, 2011) (finding defendant failed to demonstrate good cause to re-open discovery when discovery closed on September 18, 2010, but defendant knew on August 6, 2010, that it would need additional discovery, but did not attempt to seek the documents until several months after the end of discovery).

For these reasons, Plaintiff's Motion for Production from the Defendants Aloha Housewares, Inc. (Doc. # 51) is due to be denied.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment (Doc. # 44) are due to be granted. The court will issue a separate order consistent with this Memorandum Opinion addressing those and the other outstanding Motions.

**DONE** and **ORDERED** this \_\_\_\_4th\_\_\_\_ day of March, 2013.

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE